**2018 UT App 111**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
HAROLD OTTO BRYSON,
Appellant.

Opinion
No. 20160592-CA
Filed June 14, 2018

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 141906571

Teresa L. Welch, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and JILL M. POHLMAN
concurred.

TOOMEY, Judge:

¶1 Harold Otto Bryson appeals the district court's denial of his motion to redact portions of a letter entered into evidence at his trial for stalking in violation of a civil stalking injunction. He also appeals his conviction. We affirm.

### BACKGROUND

¶2 On November 17, 2011, Bryson's former girlfriend (Victim) obtained a civil stalking injunction against him. The injunction was effective for three years and ordered Bryson not to "follow, threaten, annoy, harass, or cause distress" to Victim

and not to "contact, phone, mail, e-mail, or communicate in any way" with her "either directly or indirectly."

¶3     On May 13, 2014, Victim received a FedEx package at her workplace. The package was addressed to her, identified the sender with Bryson's first name and Victim's last name, and was postmarked May 7, 2014. The package contained a letter in which Bryson referred to Victim as his "wife." The letter was addressed to "Babe" and signed "Harry," Bryson's nickname. In the letter, Bryson made a number of references to the Book of Mormon and quoted extensively from it. He also told Victim that her deceased father and grandfather were going to speak to her in a dream and that her father told Bryson to have her read certain scriptures.

¶4     Victim reported the letter to police, and ten days later, Bryson was arrested. In his interview with police, Bryson admitted he sent the letter via FedEx, although he could not remember the exact date. When police showed him a copy of it, he acknowledged it was the letter he sent and stated, "I sent the letter, of course, I will never deny I sent the letter." He also acknowledged he was aware of the injunction and even the date it had been entered but explained, "I haven't paid any mind to the injunction the entire time."

¶5     The State charged Bryson with second-degree felony stalking. Before trial, Bryson sought to have the religious references and the references to Victim's family redacted from the letter, claiming that these "could arouse an emotion in the jury that would be extremely prejudicial to [him]." Specifically, he argued,

> [I]n reference to [Victim], it talks about her grandfather and her dad. These are deceased people. . . . I mean, if people in the jury are

members of the LDS faith, they could, you know, it could go either way, I mean, it just depends on where they are with their faith. It could be disturbing to them having deceased people brought up within a letter.

The district court denied Bryson's motion.

¶6     During voir dire, the district court asked the jurors whether they had "any prejudice against the LDS Church or against the Book of Mormon." In response, one juror raised his hand, and the court dismissed him for cause.

¶7     Following trial, the jury convicted Bryson. Bryson appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Bryson first asserts that the district court erred in denying his motion to redact portions of the letter under rules 401, 402, and 403 of the Utah Rules of Evidence. "We review the [district] court's decision to admit or exclude evidence for abuse of discretion." *State v. Miranda*, 2017 UT App 203, ¶ 24, 407 P.3d 1033.

¶9     Bryson further argues that the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence, "we review the evidence and all inferences which may be reasonably drawn from it in the light most favorable to the verdict." *State v. Noor*, 2012 UT App 187, ¶ 4, 283 P.3d 543 (quotation simplified). "We will reverse the jury's verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.* (quotation simplified).

ANALYSIS

## I. The District Court Did Not Exceed Its Discretion in Denying Bryson's Motion to Redact Portions of the Letter.

¶10 Bryson first asserts that the district court should have granted his motion to redact portions of the letter because the evidence was not relevant and its probative value was outweighed by the danger of unfair prejudice. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Utah R. Evid. 401. Such evidence is generally admissible, *id.* R. 402, unless "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," *id.* R. 403.

¶11 Bryson argues that the letter's contents were irrelevant, asserting that the State was required to prove only that he sent the letter while subject to the stalking injunction, not that the letter contained any particular statements. But the fact that the State might have been able to prove its case without publishing the contents of the letter does not make those contents any less relevant. *Cf. State v. Gulbransen*, 2005 UT 7, ¶ 38, 106 P.3d 734 (holding that the State's ability to establish a fact by testimonial evidence rather than more inflammatory photographic evidence does not render the photographic evidence irrelevant), *abrogated on other grounds by Met v. State*, 2016 UT 51, 388 P.3d 447; *State v. Florez*, 777 P.2d 452, 455–56 (Utah 1989) (holding that the State is not required to accept a defendant's stipulation to facts in lieu of presenting potentially damaging evidence that is otherwise admissible). The jury was asked to determine whether Bryson sent Victim the letter, and the State therefore had to prove that Bryson was the person who sent it. The package's return address included Bryson's first name only and Victim's last name. And

the letter was signed with Bryson's nickname, not his actual name. The familial references, which included religious references, showed that the letter's author knew details about Victim, and the letter related information specific to the congregation of which Bryson is a member, as well as the identities of its ecclesiastical leaders. This information helped to establish the identity of the letter's author and was therefore relevant.

¶12   Bryson further argues that, even if relevant, the religious and family references were unfairly prejudicial and therefore inadmissible under rule 403. But rule 403 bars evidence only when its probative value is "*substantially* outweighed by the danger of *unfair* prejudice; and unfair prejudice results only where the evidence has an undue tendency to suggest decision upon an improper basis." *State v. Lucero*, 2014 UT 15, ¶ 32, 328 P.3d 841 (quotation simplified), *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016.

¶13   We are not convinced by Bryson's argument that the religious references were likely to encourage the jury to base its decision on its religious attitudes, particularly in light of the fact that the court took care to question the jurors about their religious biases and even dismissed one juror on that basis. Similarly, while the jury might have found Bryson's comments about Victim's family to be offensive or upsetting to Victim, he has not shown that they were so inflammatory as to have an "undue tendency to suggest decision upon an improper basis." *See id.* (quotation simplified). And the jurors were instructed not to let sympathy prejudice their decision. *See State v. Menzies*, 889 P.2d 393, 401 (Utah 1994) ("We generally presume that a jury will follow the instructions given it."), *superseded on other grounds by constitutional amendment*, Utah Const. art. I, § 12. Further, although the letter's contents may have been prejudicial to Bryson, they were not *unfairly* prejudicial under rule 403. Our

supreme court has explained that "[a]ll effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered," but "the rule only requires that the [district] court measure the danger the evidence poses of causing *unfair* prejudice to a defendant." *State v. Killpack*, 2008 UT 49, ¶ 53, 191 P.3d 17 (quotation simplified). Here, Bryson has not shown that the probative value of the letter's contents was substantially outweighed by any danger that the religious and family references were unfairly prejudicial. *See Lucero*, 2014 UT 15, ¶ 32.

## II. The Evidence Was Sufficient to Support Bryson's Conviction.

¶14 Bryson next argues that the evidence was insufficient to support his conviction. His argument rests on the assertion that Victim's testimony was "inherently improbable." Testimony is "inherently improbable" when it is "incredibly dubious and, as such, apparently false." *State v. Robbins*, 2009 UT 23, ¶ 18, 210 P.3d 288. Courts will disregard such testimony only where there is also "a complete lack of circumstantial evidence of guilt." *Id.* (quotation simplified); *see also State v. Prater*, 2017 UT 13, ¶ 33, 392 P.3d 398 (explaining that, in the context of inherent improbability, "only in instances where (1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt may the district court reevaluate the jury's credibility determinations" (quotation simplified)).

¶15 In support of his argument, Bryson highlights inconsistencies between Victim's testimony and her initial statements in support of her request for a stalking injunction. Specifically, in Victim's request for an injunction, she claimed that Bryson "would harass anyone new that [she] dated," but she later indicated she was dating only one person, not anyone "new," at the time. She also claimed in her request that various people witnessed Bryson stalking her, but at trial she suggested

that these people did not in fact witness the incidents.[1] But inconsistencies alone do not render testimony inherently improbable. *See State v. Prater*, 2017 UT 13, ¶ 39, 392 P.3d 398; *see also id.* ¶ 38 (explaining that for testimony to be inherently improbable, there must be "inconsistencies in [the witness's] statements *plus* patently false statements of [the witness] *plus* the lack of any corroboration"). Indeed, "[t]he question of which version of [a witness's story is] more credible is the type of question we routinely require juries to answer." *Id.* ¶ 39. Further, the inconsistencies Bryson highlights do not even relate to Victim's most relevant testimony—that she received a letter from Bryson on May 13, 2014.

¶16    Additionally, Victim's testimony was not the only evidence of Bryson's guilt. Indeed, the State presented evidence that Bryson himself admitted sending the letter to Victim; that it was signed with his nickname, "Harry"; and that it was postmarked May 7, 2014. Bryson challenges the persuasiveness of this evidence, claiming that his interview does not corroborate Victim's testimony, because he told officers he did not remember the "exact day" he sent the letter and because the copy of the letter that he signed was subsequently lost and not entered into evidence. But again, these assertions presented mere credibility issues to be resolved by the jury. *See id.* ¶ 41 ("The jury is the exclusive judge of witness credibility." (quotation simplified)).

---

1. Based on these inconsistencies, Bryson also asserts that Victim had a motive to fabricate her testimony to "deflect attention away from the inconsistent statements that she made in her request for the stalking injunction." But whether a witness has a motive to lie "goes to the weight and credibility of the testimony," which is a "question we routinely require juries to answer." *State v. Prater*, 2017 UT 13, ¶¶ 39, 41, 392 P.3d 398.

¶17    In short, Victim's testimony was not inherently improbable so as to render the evidence insufficient to support Bryson's conviction. Victim's testimony, the letter, and Bryson's own statements were sufficient to support the jury's verdict.

CONCLUSION

¶18    We conclude that the district court did not err in denying Bryson's motion to redact portions of the letter, because the letter was relevant and was not unfairly prejudicial. Further, Victim's testimony was not inherently improbable, and the evidence was sufficient to support Bryson's conviction. Accordingly, we affirm.

―――――――――