**2018 UT App 139**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MIRIAM SALGADO,
Appellant.

Opinion
No. 20160104-CA
Filed July 12, 2018

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 151401656

Lori J. Seppi and Heather J. Chesnut, Attorneys
for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1     Miriam Salgado appeals her convictions of one count of interference with an arresting officer and one count of driving under the influence (DUI). Salgado challenges the sufficiency of the evidence supporting her DUI conviction. Additionally, she contends that the trial court provided two jury instructions that improperly commented on the evidence. Finally, she argues that the trial court erred in declining to instruct the jury on a minimum-speed violation as a lesser included offense of DUI. We affirm.

## BACKGROUND[1]

### *The Traffic Stop*

¶2 While patrolling I-15 near 9000 South around 2 p.m., a Utah Highway Patrol officer (the officer) noticed a car traveling in the middle northbound lane at speeds "considerably slower than the rest of traffic," creating a traffic hazard for vehicles that had to drive around it. Because the car had its hazard lights on, the officer thought it might be having mechanical problems and that the driver—later identified as Salgado—was attempting to merge over to the shoulder of the freeway. To help Salgado safely pull over, the officer activated his patrol vehicle's rear emergency lights and blocked the two right lanes of traffic. Instead of pulling over, Salgado continued to drive at forty-five miles per hour (mph) for a while, before eventually increasing her speed to sixty-five mph, five mph below the posted maximum speed limit of seventy mph.

¶3 When Salgado failed to pull over, the officer pulled up alongside the driver's side of her car and turned on his siren to try to get her attention. She did not respond. Instead, according to the officer, she stared "kind of to the right and ahead." Thinking Salgado may be hearing impaired, the officer drove to the passenger's side of the vehicle and chirped his siren, but she continued to focus straight ahead, avoiding eye contact.

¶4 At this point, the officer grew concerned that Salgado was driving while impaired. The officer had nearly ten years of experience with the Utah Highway Patrol and had completed his standardized field sobriety instructor certification as well as his drug recognition expert (DRE) certification, although his DRE

---

1. We recite the facts in the light most favorable to the verdict, presenting conflicting evidence only as necessary to understand the issues on appeal. *See State v. Bond*, 2015 UT 88, ¶ 3 n.2, 361 P.3d 104.

certification was no longer current. Based on his training and experience, he understood that "it is common with people that are under the influence of . . . alcohol or drugs [to be] so focused on staying in their lane or what's right ahead of them, that they really don't know what's going on around them."

¶5     In an attempt to get Salgado's attention, the officer turned on all of his patrol vehicle's emergency equipment, moved in front of Salgado's car, and motioned with his hand for her to pull over. Salgado moved over one lane but continued driving. In response, the officer left the emergency equipment on and fluctuated his distance from Salgado's car, trying "to do anything [he] could to get [her] attention."

¶6     Salgado began to drive on the skip lines that divide the freeway lanes, prompting the officer to think she was going to take the 7200 South exit. She did not. "Thinking there might be a medical condition or . . . some impairment," the officer notified dispatch of the situation. Responding to that call, a detective in the area began following Salgado and the officer. According to the officer, at this point, Salgado "was not driving recklessly, she just was not responding to anything."

¶7     Salgado maintained near-freeway speeds until she approached 4500 South where traffic slowed due to an unrelated collision. As traffic slowed to approximately five to ten mph, the officer used his public address system to tell Salgado "to pull over to the right." The officer thought Salgado had finally noticed him because she motioned with her hand, but again she continued driving. Finally, when traffic completely stopped, the officer exited his patrol vehicle, knocked on Salgado's window, and instructed her to pull over. As a safety precaution, the officer and detective had approached the car with weapons drawn. With Salgado finally stopped on the side of the road, the officer ordered her out of the car and handcuffed her.

¶8     When asked why she had not stopped, Salgado initially claimed that she never saw the officer but later stated that "she didn't believe that she needed to stop." When talking to Salgado,

the officer noticed that she was confused as to why she was being stopped and that her eyelids were very droopy. Because the officer knew, through his training and experience, that certain illegal drugs and prescribed medications cause droopy eyelids, he asked Salgado whether she had taken anything. Salgado stated that she had taken four different medications at 5 a.m. that morning, including tramadol, a central nervous system depressant with effects similar to alcohol. Based on this admission and his observation of Salgado's "intent focus straight ahead, which is common with people that are under the influence," the officer was concerned about her ability to drive and consequently began a DUI investigation.

¶9     The investigation included three standardized field sobriety tests: the horizontal gaze nystagmus test,[2] the nine-step walk-and-turn, and the one-leg stand. The officer testified that law enforcement use these field sobriety tests to assess a driver's balance, coordination, and ability between divide his or her attention to more than one task. During each test, an officer looks for "clues" that the driver is impaired by drugs and/or alcohol, such as jerking eyes, inability to maintain balance, and failure to follow instructions. More clues equate to "more signs of impairment."

¶10    Before the officer administered the first test, he asked Salgado whether she suffered from any current injuries or illnesses that might affect the test results. Because Salgado said she had previously undergone brain surgery, the officer examined her eyes to check for abnormalities that would indicate head trauma, but he found none. Her pupils were the same size, they were tracking equally, and there was no resting eye nystagmus. Salgado denied having any other injury that

---

2. According to the officer, an individual who is under the influence of drugs or alcohol can have nystagmus, which is "an involuntary jerking of the eye."

could impair her ability to perform the tests, such as back, knee, or ankle problems.

¶11  Confident the results of the horizontal gaze nystagmus test would be accurate, the officer conducted the three-part test. During the first part of the test, the officer noticed that "there was a lack of smooth pursuit" in both of Salgado's eyes, resulting in "two clues." When the officer asked Salgado to look as far left and right as she could, he observed additional signs of nystagmus, which amounted to two more clues. During the final part of the test, however, Salgado showed no additional signs of nystagmus. All told, Salgado demonstrated four clues on this test, which, according to the officer, is a significant indication that an individual is "either over the legal limit of alcohol or impaired by drugs."

¶12  The officer next administered the nine-step walk-and-turn test, looking for up to eight clues. He later testified that studies have demonstrated that observing two clues during this test is a significant indication that an individual is impaired. Salgado exhibited six clues—failing to maintain balance during the instruction phase of the test, missing heel to toe several times, stepping off the line several times, taking the wrong number of steps the first time, taking the wrong number of steps the second time, and performing an improper turn.

¶13  Finally, the officer asked Salgado to perform the one-leg stand, a test with four potential clues. The officer observed two clues when she put her foot down twice and when she swayed during the test.

¶14  The officer gave all of the test instructions in English. Although Salgado is a native Spanish speaker, she never asked for an interpreter or otherwise indicated that she did not understand. The officer testified that he did not believe there was a language barrier sufficient to necessitate a translator, because Salgado responded appropriately to the questions that he asked her and she confirmed that she understood.

¶15    The officer administered a breath test, which showed that Salgado had not consumed alcohol. Nevertheless, based on his training and experience, his observations of Salgado's driving, and the results of the field sobriety tests, the officer arrested Salgado for DUI. A subsequent chemical test confirmed the presence of tramadol in Salgado's system.

¶16    During a post-arrest interview that same day, the officer asked Salgado "where she was coming from, where she was going, [and] what she'd been doing." Salgado was again able to respond to all of the officer's questions. She told him that she was having problems with her tire and that she had been driving from Orem to her mechanic in Salt Lake City.

¶17    The State ultimately charged Salgado with one count of failure to respond to an officer's signal to stop, a third degree felony, *see* Utah Code Ann. § 41-6a-210 (LexisNexis 2014), and one count of DUI, a class B misdemeanor, *see id.* § 41-6a-502.

*Procedural History*

¶18    The case proceeded to trial. After the close of the State's case, Salgado moved for a directed verdict on the DUI charge, contending that there was insufficient evidence to prove she was not "able to safely operate the motor vehicle." Specifically, Salgado argued that the State's only allegation was that "she was moving slowly with hazard lights on . . . . And [that] this by itself is not enough." In ruling on the motion, the judge stated, "I think there is sufficient evidence that the jury could look at it and determine that . . . the facts support a finding of guilt" because "[h]er eyes were drooping" and there were "the clues that [the officer] talked about." The trial continued, and Salgado did not renew her motion for a directed verdict.

¶19    At the close of the evidence, the court heard arguments from each side regarding proposed jury instructions. Salgado objected to two of the State's requested instructions, later numbered as Instructions 18 and 19. Instruction 18 listed "relevant factors" for "determining whether alcohol and/or

drugs rendered defendant incapable of safely operating a vehicle." Salgado argued that such an instruction "emphasizes some pieces of evidence over other pieces of evidence and creates a situation . . . of the Court commenting on what's important and what isn't in [the jury's] factual determination." The court overruled Salgado's objection, explaining that "there's no instruction that could give all of the relevant factors" and that Salgado was not precluded from arguing any other factors that might be relevant.

¶20    Instruction 19 included a sentence interpreting the statute, which explained that "tak[ing] drugs as directed by a physician pursuant to a prescription . . . does not excuse the defendant's liability for DUI." Salgado objected only to this sentence, contending that it was an "incorrect" interpretation of the statute and was neither "supported" nor "warranted." Because the court believed it was not "inappropriate" to include this sentence, it overruled Salgado's objection.

¶21    Salgado requested two lesser included offense instructions. The trial court granted her request to instruct the jury on interference with an arresting officer as a lesser included offense of failure to respond to an officer's signal to stop. She also requested a jury instruction on minimum-speed violation as a lesser included offense of DUI. The judge declined her request, stating, "I don't believe that a minimum speed violation is a lesser included offense as defined by case law."

¶22    The jury convicted Salgado of one count of interference with an arresting officer, a class B misdemeanor, *see* Utah Code Ann. § 76-8-305 (LexisNexis 2017), and one count of driving under the influence of alcohol and/or drugs, a class B misdemeanor, *see id.* § 41-6a-502 (2014). Salgado appeals.


ISSUES AND STANDARDS OF REVIEW

¶23    Salgado raises several issues on appeal. First, Salgado contends that her DUI conviction must be overturned because

the State presented insufficient evidence to prove she was impaired by drugs to such a degree that she was incapable of safely operating her vehicle. "In evaluating sufficiency of the evidence claims, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Robertson*, 2018 UT App 91, ¶ 20 (quotation simplified). "We will reverse the jury's verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Bryson*, 2018 UT App 111, ¶ 9 (quotation simplified).

¶24    Second, Salgado contends that Instructions 18 and 19 improperly commented on the evidence by incorrectly instructing the jury on determining drug impairment. "A challenge to a jury instruction as incorrectly stating the law presents a question of law, which we review for correctness." *State v. Prawitt*, 2011 UT App 261, ¶ 5, 262 P.3d 1203 (quotation simplified). But "[the] precise wording and specificity [of jury instructions] is left to the sound discretion of the trial court." *State v. Frausto*, 2002 UT App 259, ¶ 18, 53 P.3d 486.

¶25    Third, Salgado contends that the trial court erred in denying her request to instruct the jury on minimum-speed violation as a lesser included offense of DUI. "A trial court's refusal to grant a lesser included offense instruction is a question of law, which we review for correctness."[3] *State v. Norton*, 2018 UT App 82, ¶ 26 (quotation simplified).

_____

3. Salgado also contends the cumulative effect of the trial errors warrants reversal. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Carvajal*, 2018 UT App 12, ¶ 16, 414 P.3d 984 (quotation simplified). However, where, as here, we conclude that the

(continued…)

ANALYSIS

I. Sufficiency of the Evidence

¶26 Salgado contends that we should reverse her DUI conviction "because the State presented insufficient evidence to prove beyond a reasonable doubt that [she] was impaired by drugs" to a degree that rendered her incapable of safely operating her vehicle. As an initial matter, we must address the State's argument that Salgado failed to preserve the issue she asserts on appeal. According to the State, Salgado did not specifically raise the issue or support her argument with relevant legal authority in her motion for a directed verdict. Because we conclude that Salgado preserved the issue, we next address whether the trial court erred in submitting the charge to the jury.

A.    Preservation

¶27 Absent an exception to the preservation requirement, "[w]e generally do not hear [issues] on appeal that were not presented to the [trial] court." *State v. Prater*, 2017 UT 13, ¶ 27, 392 P.3d 398. An issue is preserved for appeal "when it has been presented to the [trial] court in such a way that the court has an opportunity to rule on it." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (quotation simplified). To provide the court with such an opportunity, the party asserting error must specifically raise the issue in a timely fashion and must introduce supporting evidence and relevant legal authority. *Id.*

¶28 Here, Salgado moved for a directed verdict on the DUI charge at the close of the State's case, arguing that there was insufficient evidence to prove that she was unable "to safely

---

(…continued)
issues asserted on appeal do not constitute error or are otherwise harmless, the cumulative error doctrine is inapplicable. *See State v. Wright*, 2013 UT App 142, ¶ 44, 304 P.3d 887.

operate the motor vehicle" because, according to Salgado, "[t]he sole allegation [was that] she was moving slowly with hazard lights on. No other reckless behavior was observed." On appeal, Salgado contends that the State failed "to prove that [she] was impaired by tramadol to a degree that rendered her incapable of safely operating a vehicle." In support of this contention, Salgado argues that "the State's proof that [she] was impaired by tramadol was too speculative to support a conviction" where (1) the State's expert "could not say that Salgado had enough of the drug in her body to create a therapeutic effect let alone an impairing effect," and (2) the arresting officer "was not trained to distinguish drug impairment from medical conditions or innocent behavior." Although Salgado did not make these two specific arguments before the trial court, "issues must be preserved, not arguments for or against a particular ruling on an issue raised below." *See State v. Garcia*, 2017 UT 53, ¶ 51 (quotation simplified).

¶29    Furthermore, it is clear from the record that the court not only understood that Salgado was challenging the State's evidence of impairment but also had an opportunity to rule on that precise issue. The trial court held that "there's sufficient evidence that the jury could [find] . . . that there's such impairment there that she's incapable. Her eyes were drooping. We have . . . the clues that [the officer] talked about." We therefore conclude that Salgado preserved for appeal her challenge to the sufficiency of the evidence supporting the DUI conviction.

B.      Denial of Directed Verdict

¶30    "A defendant must overcome a substantial burden on appeal to show that the trial court erred in denying a motion for [a] directed verdict." *State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168. A trial court must deny a motion for a directed verdict at the close of the State's case if it determines that the State "has established a prima facie case against the defendant by producing believable evidence of all the elements of the crime

charged." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quotation simplified). We will uphold that denial if "we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Id.* (quotation simplified). On review, the evidence and all inferences that may reasonably be drawn from it are viewed in the light most favorable to the State. *See id.* Because the State presented some evidence on each element of DUI, we conclude that the trial court did not err in submitting the charge to the jury.[4]

¶31    To establish a prima facie case for DUI and survive a motion for a directed verdict, the State had to present believable evidence that Salgado operated or was in actual physical control of a vehicle while she was under the influence of tramadol to a degree that rendered her incapable of safely operating that vehicle. *See* Utah Code Ann. § 41-6a-502(1)(b) (LexisNexis 2014). It is undisputed that Salgado had operated a vehicle and that she had taken tramadol on the day in question. On appeal, Salgado challenges the State's proof only as it relates to impairment, i.e., her ability to safely operate her vehicle. In particular, Salgado contends that the State's proof is based on speculation because (1) its expert "could not say that Salgado had enough of the drug

---

4. Salgado argues that "the insufficiency of the State's evidence becomes even starker" when the defense evidence is also considered. Salgado acknowledges that she failed to renew her motion for a directed verdict at the close of the evidence, but she argues that the trial court plainly erred when it did not dismiss the DUI charge sua sponte after the presentation of the defense case. For the reasons explained *infra* ¶¶ 31–37, we conclude that the State presented sufficient evidence to support each element of the DUI charge. Consideration of the conflicting evidence presented by the defense would not alter the analysis, because weighing conflicting evidence and witnesses' credibility is squarely within the province of the jury. *See State v. Prater*, 2017 UT 13, ¶ 31, 392 P.3d 398.

in her body to create a therapeutic effect let alone an impairing effect," and (2) the arresting officer "was not trained to distinguish drug impairment from medical conditions or innocent behavior."

¶32    At trial, the State called an expert witness who had tested Salgado's blood sample. The expert confirmed that Salgado had ingested tramadol, testifying that her test results were "positive." He explained that a positive result shows whether the amount of tramadol in Salgado's system fell within the detection range but not whether that amount was impairing. According to the expert, even if the results showed the precise amount of tramadol in Salgado's system, a DRE evaluation or eyewitness testimony would still be required to determine whether she was impaired.

¶33    Here, the State presented testimony from the officer regarding Salgado's unusual driving patterns and her performance on several field sobriety tests to prove that she was impaired to a degree that rendered her incapable of safely operating her vehicle. In particular, the officer testified that Salgado first caught his attention because she was driving considerably below the speed limit, which created a "traffic hazard" for the cars that had to go around her. According to the officer, he then made several attempts to get Salgado to pull over—including driving along both sides of her car, driving in front of and behind her car, motioning with his hand, activating his emergency equipment, and making an announcement over his public address system—yet Salgado did not respond. The officer further testified that although he had previously been worried that Salgado was experiencing mechanical or medical issues, he began to suspect that she was impaired when she failed to pull over and when she maintained her intent focus straight ahead. When Salgado did finally pull over, the officer's suspicion was heightened when he noticed that her "eyelids were very droopy" and that "[s]he was very confused about what was going on and why she was being stopped."

¶34    To confirm whether Salgado was impaired, the officer began a DUI investigation, which included three standardized field sobriety tests that are used "whether [the officer is testing] for drugs or . . . alcohol." The officer testified that Salgado showed signs of impairment during each test, exhibiting twelve out of eighteen possible clues.

¶35    Salgado's challenge to the sufficiency of the evidence largely rests on her contention that the officer's testimony is speculative because he was not certified as a DRE at the time of Salgado's arrest. To support her argument that a DRE evaluation is required to assess drug impairment, Salgado relies on *State v. Hechtle*, 2004 UT App 96, 89 P.3d 185. In *Hechtle*, this court was asked to determine whether the officer had probable cause to arrest the defendant for driving with any measurable controlled substance in the body. *Id.* ¶ 9. The officer identified several factors to support his probable cause determination, including, among other things, the presence of several air fresheners in the car and the appearance of the defendant's eyes and tongue. *Id.* ¶¶ 3–5. In concluding that the officer lacked probable cause, this court reasoned that "the trooper noted . . . no signs of recent drug use" and that "he did nothing to confirm his suspicions." *Id.* ¶ 14 (emphasis omitted). In particular, "[t]he trooper performed no field sobriety tests and made no attempt to involve a certified DRE to validate his suspicions." *Id.*

¶36    Contrary to Salgado's reading, *Hechtle* does not require a DRE evaluation in every case where an officer suspects that a driver is under the influence of drugs. Indeed, this court recognized that "conclusions concerning drug use do not require a DRE so long as the officer involved is prudent, experienced, and trained and can employ proper technique in making the determination." *Id.* ¶ 13 n.3. The officer in this case had significant training and experience related to detecting drug and alcohol impairment. Specifically, the officer testified that he was "certified as a standardized field sobriety instructor" and that he had been "a DRE for a couple of years." Although he had not renewed his DRE certification, he had previously undergone the

requisite training that aided his conclusion that Salgado was impaired. And, unlike the officer in *Hechtle*, the officer observed odd behavior indicative of recent drug use, including Salgado's intent focus straight ahead and failure to notice his signals to stop, and he conducted several field sobriety tests, which confirmed his suspicion of impairment.

¶37 Salgado maintains that there are several innocent explanations for her driving pattern and performance on the field sobriety tests. However, "when conflicting or disputed evidence is presented at a jury trial, the jury serves as the exclusive judge of both the credibility of the witnesses and the weight to be given particular evidence." *State v. Prater*, 2017 UT 13, ¶ 31, 392 P.3d 398 (quotation simplified). On "a motion for a directed verdict, the court is not free to weigh the evidence and thus invade the province of the jury, whose prerogative it is to judge the facts." *Montoya*, 2004 UT 5, ¶ 32 (quotation simplified). Rather, viewing the evidence in the light most favorable to the State, the court must "determine whether the state has produced 'believable evidence' on each element of the crime from which a jury, acting reasonably, could convict the defendant." *Id.* "If there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged," the court must submit the case to the jury. *Id.* ¶ 33 (quotation simplified). As explained above, the State met its burden of producing believable evidence on each element of DUI. Thus, the trial court did not err in denying Salgado's motion for a directed verdict at the close of the State's case and submitting the charge to the jury.

## II. Jury Instructions

¶38 Salgado contends that "the trial court erred by giving Instructions 18 and 19 because those instructions improperly commented on the evidence by incorrectly instructing the jury on how to determine drug impairment." "It is the sole and exclusive province of the jury to determine the facts in all criminal cases . . . ." *State v. Maama*, 2015 UT App 235, ¶ 20, 359 P.3d 1272 (quotation simplified). Thus, "a court may not

comment on [either] the weight of the evidence presented at trial or . . . the merits of the case in such a way that indicates a preference toward either party." *State v. Fouse*, 2014 UT App 29, ¶ 24, 319 P.3d 778 (quotation simplified). "Language used in jury instructions should not overemphasize an aspect of the evidence or amount to a comment on the evidence." 75A Am. Jur. 2d *Trial* § 981 (2018). A jury instruction may amount to an improper comment on the evidence where the court singles out or gives undue emphasis to particular evidence while disregarding other evidence. *See id.*

¶39 Salgado contends that Instructions 18 and 19 both improperly commented on the evidence. We consider each instruction in turn.

A. Instruction 18

1. Preservation

¶40 As an initial matter, the State contends that Salgado's challenge to Instruction 18 is unpreserved because her "claim on appeal is not the claim she raised below." In describing Salgado's objection at trial, the State explains that "[Salgado] argued that listing some . . . factors relevant to assessing impairment improperly emphasized those factors over . . . other potentially relevant factors and thereby constituted improper comment on the evidence." The State then articulates Salgado's contention on appeal, explaining that "she argues that the court should have given the jury different or additional factors to consider." Salgado maintains that her argument on appeal is the same one made during trial—that "Instruction 18 was erroneous and should not have been given," not that it should have been supplemented to include additional factors.

¶41 For an issue to be preserved, it "must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority." *State v. Oliver*, 2018 UT App 101, ¶ 13 (quotation simplified). At trial, Salgado argued that "anything that's admitted into evidence is . . . presumed to be

relevant" and will be considered in the jury's deliberations. But according to Salgado, Instruction 18 impeded the deliberative process by "emphasiz[ing] some pieces of evidence over other[s]." In particular, she believes that Instruction 18 could lead the jury to incorrectly assume that the "defendant's coordination, judgment, [and] physical appearance" are important factors, while "a medical condition [and] . . . language issues" are not. On appeal, Salgado points to additional shortcomings: "[Instruction 18] did not tell the jury that drugs affect different people differently, educate the jury on the factors DREs use to determine drug impairment, or provide a list of factors tailored to tramadol impairment." Contrary to the State's characterization,[5] Salgado has never argued that Instruction 18 should have included these additional factors. Instead, she highlights these factors to support her contention that an instruction of this kind should not be given at all. Because Salgado has raised the same issue at trial and on appeal, we conclude that this issue is preserved and review it accordingly.

2.      Harmlessness

¶42    Salgado contends that Instruction 18 improperly commented on the evidence because it "emphasized some factors of impairment over others and incorrectly limited the

---

5. To the extent that the State recognizes that Salgado intended to renew her trial argument—that "Instruction 18 constituted a comment on the evidence because it improperly emphasized some factors of impairment over others"—it contends that her argument is inadequately briefed. As we determined with the State's preservation challenge, we conclude that the State's inadequate briefing challenge is based on a misinterpretation of Salgado's argument. And we are unpersuaded that the renewal of her trial argument was relegated to a "single conclusory statement." Instead, we conclude that it was supported by citations to the record and relevant legal authority as required by rule 24(a)(8) of the Utah Rules of Appellate Procedure.

types of factors for emphasis to the physical manifestations of alcohol impairment." In other words, Instruction 18 "was erroneous because it instructed the jury to assess drug impairment the same way that it would alcohol impairment."

¶43 Instruction 18 included a nonexclusive list of factors that the jury could consider in determining whether Salgado was impaired to a degree that she could not safely drive. The instruction provided:

> In determining whether alcohol and/or drugs rendered defendant incapable of safely operating a vehicle, relevant factors include, but are not limited to, the following:
>
> - The defendant's driving pattern, if any
>
> - The defendant's physical appearance
>
> - The smell of alcohol on the defendant, if any
>
> - The defendant's coordination
>
> - The defendant's judgment
>
> - The defendant's actions before and after driving
>
> - Whether the defendant took field sobriety tests and, if so, her performance on them

¶44 Even assuming the trial court erred in instructing the jury on factors that were irrelevant to assessing tramadol impairment, we conclude that any error was harmless. An error does not require reversal "if it is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *State v. Reece*, 2015 UT 45, ¶ 33, 349 P.3d 712 (quotation simplified).

¶45   Instruction 18 included only one factor that referenced alcohol: "the smell of alcohol on the defendant, if any." It is clear from that instruction that this factor is to be disregarded if the smell of alcohol is absent. As a result, where the State presented no evidence of alcohol impairment, "there was absolutely no way the jury could have related the instruction to the verdict." *State v. Anselmo*, 558 P.2d 1325, 1327 (Utah 1977). The remaining factors were relevant to both drug and alcohol impairment. We therefore conclude that there was no reasonable likelihood that Instruction 18 affected the outcome of the trial.

B.    Instruction 19

¶46   Salgado also contends that Instruction 19 improperly commented on the evidence. Instruction 19 provides:

> [I]t is not a defense to the charge of DUI that the defendant is or has been legally entitled to use the alcohol or drugs she may have consumed. In other words, the fact that the defendant may have taken drugs as directed by a physician pursuant to a prescription or otherwise does not excuse the defendant's liability for DUI if her ability to safely operate a vehicle is impaired as a result of the introduction of such drugs into the defendant's body.

Salgado concedes that the first sentence accurately reflects the law as prescribed by Utah Code section 41-6a-504. *See* Utah Code Ann. § 41-6a-504 (LexisNexis 2014) ("The fact that a person . . . is or has been legally entitled to use alcohol or a drug is not a defense against any charge of violating [the DUI statute]."). But Salgado argues that "the jury could have understood [the second sentence] to mean that [it] could not consider the fact that [she] took tramadol as prescribed . . . as evidence that [she] was not impaired." We disagree with Salgado's reading of Instruction 19.

¶47 The second sentence of Instruction 19 reiterates the law in simple terms and tailors it to drug impairment, which was the relevant scenario at trial. The second sentence does not bar the jury from considering evidence that Salgado took tramadol as prescribed to mitigate a finding of impairment. Instead, it accurately states the law: legal use of prescription drugs is not a defense to DUI "if [an individual's] ability to safely operate a vehicle is impaired" as a result of taking the medication. Accordingly, we conclude that Instruction 19 was a correct statement of the law and properly given.

¶48 Because we conclude that any error in providing Instruction 18 was harmless and that the trial court did not err in providing Instruction 19, we need not address Salgado's contention that these instructions prejudiced her defense.

### III. Lesser Included Offense

¶49 Salgado contends that the trial court improperly denied her request "to instruct on minimum-speed violation as a lesser-included offense of DUI." "A defendant's request for a lesser included offense instruction is evaluated under the evidence-based standard set out in Utah Code section 76-1-402(4)." *State v. Campbell*, 2013 UT App 23, ¶ 5, 295 P.3d 722 (quotation simplified). In interpreting this standard, the Utah Supreme Court has determined that a defendant is entitled to such an instruction where (1) "the charged offense and the lesser included offense have overlapping statutory elements" and (2) "the evidence 'provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.'" *State v. Powell*, 2007 UT 9, ¶ 24, 154 P.3d 788 (quoting *State v. Baker*, 671 P.2d 152, 159 (Utah 1983)). Salgado has not established a rational basis in the evidence that would have justified acquitting her of DUI and convicting her of a minimum-speed violation.

¶50 There was no evidentiary basis to convict Salgado of committing a minimum-speed violation. A person violates the minimum-speed statute by "operating a motor vehicle at a speed

so slow as to impede or block the normal and reasonable movement of traffic." Utah Code Ann. § 41-6a-605(1) (LexisNexis Supp. 2016). However, a person does not violate the statute if "a reduced speed is necessary for safe operation."[6] *Id.* § 41-6a-605(1)(a).

¶51   At trial, Salgado testified that her car had a flat tire and that she was trying to drive from Utah Valley University to her mechanic in Salt Lake City. She testified that she was driving slowly because her "car was making a strange noise" and she "was afraid [she] was going to get into an accident." If the jury had credited Salgado's testimony that her slow speed was due to some type of mechanical problem and not due to drug impairment, it would have acquitted on both DUI and minimum-speed violation charges. Based on the evidence presented at trial, there was no rational basis on which the jury could have acquitted Salgado of DUI while convicting her of a minimum-speed violation. Therefore, the court properly denied her request for a lesser included offense instruction.

---

6. Salgado argues on appeal that this exception is an affirmative defense that the State would need to disprove only in the event that she asserted it. Even assuming, without deciding, that the exception is an affirmative defense, by testifying that she was driving slowly because she had a flat tire and that her car was making a strange noise, Salgado had put the exception at issue, and the State therefore would have had to disprove it for the jury to convict her of a minimum-speed violation. *See State v. Drej*, 2010 UT 35, ¶ 15, 233 P.3d 476 ("The Utah rule requires that the prosecution disprove the existence of affirmative defenses beyond a reasonable doubt once the defendant has produced some evidence of the defense." (quotation simplified)).

CONCLUSION

¶52    We conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Salgado was impaired by prescription drugs to a degree that rendered her incapable of safely operating her vehicle. In addition, we conclude that neither Instruction 18 nor Instruction 19 improperly commented on the evidence. Finally, we conclude that the trial court correctly denied Salgado's request for a lesser included offense instruction. Accordingly, we affirm Salgado's convictions.

_____