2020 UT App 45

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GREGORY SCOTT HIGLEY,
Appellant.

Opinion
No. 20190041-CA
Filed March 26, 2020

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 185400100

Emily Adams and Cherise Bacalski, Attorneys
for Appellant

David O. Leavitt, Charlotte Howard, and Jeff
Buhman, Attorneys for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1     Gregory Scott Higley appeals his conviction for driving under the influence (DUI), alleging his trial counsel provided ineffective assistance and that the district court erred when it denied his motion to instruct the jury on reckless driving. He also moves for a remand to supplement the record under rule 23B of the Utah Rules of Appellate Procedure, claiming his trial counsel provided ineffective assistance with regard to his convictions for possession of heroin and possession of drug paraphernalia. We affirm his DUI conviction and deny his rule 23B motion.

## BACKGROUND[1]

¶2     One evening, around midnight, a driver of a passing vehicle noticed a vehicle stopped in a left-turn lane and extending slightly into an intersection. The vehicle's engine was running and Higley was in the driver seat, slumped over and sleeping. The car's window was open. The driver called out and honked his horn, but Higley did not respond. The driver then telephoned the police.

¶3     When an officer (Officer One) arrived, he found the keys in the ignition and noticed that the vehicle's engine was running. He also discovered that the vehicle, which had a manual transmission, was in neutral without the emergency brake engaged. Officer One approached the vehicle and jostled Higley's arm to wake him. Officer One described Higley as "drowsy" and "out of it . . . just spaced out." Higley told Officer One that he wanted to smoke a cigarette and "made a movement with his hand toward . . . the center console," but Officer One would not let him. Officer One called for backup, and other officers (Officers Two, Three, and Four) arrived.

¶4     The officers asked Higley if he had taken any medications or consumed alcohol; Higley responded, "no," but then said he was prescribed alprazolam (Xanax) for treatment of several conditions. Officer Two administered field sobriety tests (FSTs) to Higley. Officer Two testified that FSTs are used "to determine impairment . . . if [the person] should be driving or not." He also noted that people are expected to multitask during the FSTs "because when you're driving a car, . . . you have to multitask. If you're not able to do these instructions and follow them . . . , you probably shouldn't be driving."

---

1. On appeal from a jury verdict, "[w]e recite the facts in the light most favorable to the verdict, presenting conflicting evidence only as necessary to understand the issues on appeal." *State v. Salgado*, 2018 UT App 139, n.1, 427 P.3d 1228.

¶5    Two of the three FSTs required Higley to use his balance; he failed both of those tests. For the walk-and-turn test, Higley was instructed to take nine heel-to-toe steps in one direction, turn, and take another nine similar steps in the opposite direction. But he took eighteen steps in one direction, twenty-two in the other, "struggl[ed] with his balance," and grabbed at a nearby fence to stay upright. When Officer Two told Higley to balance on one leg and count out loud to thirty, Higley informed him that he had injured both of his ankles years ago and asked if he could "pop" his ankles before beginning, which the officer allowed. Higley then "stumbl[ed] the whole time" and "could barely keep his foot up for more than a second." Higley was then given a field breathalyzer test, which registered no alcohol on his breath. But because of the surrounding circumstances—including the location of Higley's vehicle, that he was found slumped over sleeping in the driver seat, that he was unable to follow the officers' instructions, and his failure of two of the three FSTs—Officer Two placed Higley under arrest.

¶6    After Higley was arrested, Officer Three searched his vehicle and, in the center console, found a Natural American Spirit cigarette box with heroin inside. Officer Three testified that when he confronted Higley about the heroin, Higley responded "the car belonged to his mother and [the drugs were] probably his mom's," although at the beginning of their encounter, Higley told Officer One he was the vehicle's registered owner. Officer Three also testified that the Natural American Spirit cigarette box was "[t]he only box" found in the vehicle. Officer Two booked the cigarette box and heroin into evidence. At the police station, Higley was given a blood test, which registered Xanax but no other substances in his system.

¶7    The State charged Higley with, among other things, possession of heroin, possession of drug paraphernalia, and DUI. At trial, the State's toxicologist testified that the amount of Xanax in Higley's system was consistent with clinical use and

did not indicate abuse of the drug. But the toxicologist also said the effects of the drug, such as "dizziness, disorientation, drowsiness, [and] slurred speech," could be present even when it is taken within the clinical range.

¶8     Higley's physician testified that he had been prescribing Xanax to Higley to treat various conditions for approximately six years. Higley testified in his defense and explained that he broke both of his ankles years ago and they had not healed properly. Because of this, Higley said, he is in constant pain and his "gait[] [is] off."

¶9     Higley explained that, on the day of his arrest, he took two doses of Xanax, one at approximately 1:00 p.m. and the other at approximately 9:00 p.m. He said he ran errands all day and at the end of the day, as he was leaving a store, he encountered a man and a woman in the parking lot. They asked Higley for a ride, and he agreed. The man sat in the back, and the woman was in the front passenger seat. Higley said each passenger carried personal items—the man had a backpack, and the woman had a purse and grocery bags. Higley said, while he was driving, he heard something spill, followed by the man saying, "I just spilled . . . my backpack." But on cross-examination, Higley said neither person left anything in his vehicle.

¶10    Higley said he "was extremely exhausted" after dropping off his passengers, so he put his vehicle in neutral, kept the motor running, "took a few deep breaths[,] . . . leaned back, and the next thing [he] knew," Officer One was at the window trying to wake him. Higley also denied telling Officer Three that the drugs in the vehicle belonged to his mother.

¶11    At the end of trial, Higley's counsel moved the court to instruct the jury on reckless driving as a lesser included offense to the DUI charge, arguing, "[T]he facts support reckless driving based on [Higley's] drowsiness, his inability to operate the

vehicle safely, unrelated to the controlled substances." Trial counsel elaborated, "DUI is a traffic violation, and the elements would support lesser traffic violations, because DUI is a moving violation. . . . [I]n terms of whether or not they're both moving violation[s] in terms of traffic violations, I think it's the same." The State opposed the motion, arguing that the charges "have separate elements" and that a "DUI isn't always a driving violation. It asks that [the defendant] have actual physical control under [the statute] and impairment." The court denied the motion, ruling that reckless driving was not a lesser offense included in DUI, because it "has a separate element that goes beyond what's required for a DUI." The jury convicted Higley on all counts. Higley appeals.

ISSUES AND STANDARDS OF REVIEW

¶12 Higley first contends his trial counsel was ineffective for failing to move to arrest judgment on the grounds that insufficient evidence supported his DUI conviction. A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law. *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587.

¶13 Second, Higley contends the district court erred when it declined to instruct the jury on reckless driving as a lesser included offense in the DUI charge. A district "court's refusal to grant a lesser included offense instruction is a question of law, which we review for correctness." *State v. Salgado*, 2018 UT App 139, ¶ 25, 427 P.3d 1228 (quotation simplified).

¶14 Additionally, Higley contends his trial counsel was ineffective when he did not adequately question or call witnesses regarding Higley's possession of heroin and possession of drug paraphernalia. Higley has moved this court, under rule 23B of the Utah Rules of Appellate Procedure, to remand the case so that the record can be supplemented to support this claim of ineffective assistance of counsel. "In

determining whether a rule 23B remand is appropriate, we assess whether [the appellant] has made a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Rhodes*, 2019 UT App 143, ¶ 21, 450 P.3d 1123 (quotation simplified).

ANALYSIS

I. Ineffective Assistance of Counsel

¶15    To succeed on a claim of ineffective assistance of counsel, an appellant must show counsel's objectively deficient performance and that the deficient performance prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Because the appellant must prove both prongs of the *Strickland* test, an appellate court is not required "to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Archuleta v. Galetka*, 2011 UT 73, ¶ 41, 267 P.3d 232 (quotation simplified). "With regard to the first prong, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Calvert*, 2017 UT App 212, ¶ 22, 407 P.3d 1098 (quotation simplified). "The failure of counsel to make motions that would be futile if raised does not constitute ineffective assistance . . . because the decision not to pursue a futile motion is almost always a sound trial strategy." *State v. Bond*, 2015 UT 88, ¶ 63, 361 P.3d 104 (quotation simplified). And "the ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36; *see also State v. Ray*, 2020 UT 12, ¶ 33.

¶16    Higley claims his trial counsel's failure to move to arrest judgment after the jury found him guilty of DUI constituted ineffective assistance. At any time before sentence is imposed, a defendant may move to "arrest judgment if the facts

proved or admitted do not constitute a public offense." Utah R. Crim. P. 23.

¶17  Under Utah law, "[a] person may not operate or be in actual physical control of a vehicle within this state if the person . . . is under the influence of . . . any drug . . . that renders the person incapable of safely operating a vehicle." Utah Code Ann. § 41-6a-502(1)(b) (LexisNexis 2018). "In DUI cases, this court has oft stated that a jury may properly consider the entirety of the evidence in determining whether the level of impairment . . . makes it unsafe for an individual to drive." *State v. Harvey*, 2019 UT App 108, ¶ 21, 446 P.3d 125.

¶18  Higley concedes that (1) he had actual physical control of his vehicle and (2) he had a drug—Xanax—in his system. But he contends the State did not show he was incapable of safely operating his vehicle because "no officer observed any erratic driving pattern"; he "was of clear enough mind to put his car in neutral and have the tires rest in a gutter so his car would not move"; he "was very responsive to the officers' questions and demands"; and he "offer[ed] clear and correct information, exit[ed] his car without a problem, and walk[ed] around without tripping or staggering." Higley relies heavily on *Harvey*, where the defendant was convicted of DUI after failing two FSTs—the walk-and-turn test and the horizontal gaze nystagmus test. *Id.* ¶ 5. In that case, this court questioned the reliability of the walk-and-turn test because the defendant claimed he had suffered injuries to both of his legs. *Id.* ¶ 27. This court held "these two failed tests, standing alone, [we]re insufficient to support a finding beyond a reasonable doubt that [the defendant] was so impaired that he was incapable of safely operating his vehicle." *Id.* ¶ 26. But in that case, there was no testimony from the arresting officer that the failure of the FSTs established "any indication of [the defendant's] inability to operate a motor vehicle safely." *Id.* ¶ 24 n.4. But in Higley's case, Officer Two testified that the FSTs

could show "impairment . . . if [the driver] should be driving or not."[2] And in this case, the FST results do not stand alone; Higley does not grapple with the fact that he, unlike the defendant in *Harvey*, was parked in an intersection and asleep at the wheel with the motor running, that he struggled to keep his balance, leaned on a fence, repeatedly delayed taking the FSTs, and that he had difficulty complying with the officers' orders. *Cf. id.* ¶ 24 ("Officer stated that [the defendant] kept his balance and did not lean on anything when he got out of his truck in preparation to complete the FSTs. And no mention is made of [the defendant] struggling to comply with [the officer's] orders during the FSTs."). The evidence, in addition to his failed FSTs, showed Higley speaking slowly, falling over repeatedly, nearly walking into a sign on the side of the road, and continually attempting to delay taking the FSTs. And Higley's contention that his vehicle was properly pulled over with its tires in a gutter is belied by video evidence and the officers' testimony. Higley was not pulled over to the side of the road or parked in a lot; the vehicle was in an active traffic lane, partially protruding into the intersection with its engine running, and Higley was found slumped over and sleeping in the driver seat.

¶19    These facts constitute ample evidence for the jury to find Higley was unable to safely operate his vehicle. We are hard-pressed to identify how "the facts proved . . . do not constitute a public offense." *See* Utah R. Crim. P. 23. On this basis, we conclude any motion to arrest judgment would have been futile. Thus, it was not objectively unreasonable for Higley's trial counsel to forgo moving for an arrested judgment. *See Bond*, 2015 UT 88, ¶ 63.

---

2. Although this court in *Harvey* acknowledged that "studies show that fifty percent of completely sober drivers fail the walk-and-turn test," *State v. Harvey*, 2019 UT App 108, ¶ 27, 446 P.3d 125, Officer Two's testimony was in evidence and the jury could properly rely on it.

II. Lesser Included Offense Instruction

¶20     A defendant is entitled to a jury instruction for a lesser included offense "where (1) the charged offense and the lesser included offense have overlapping statutory elements and (2) the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *State v. Salgado*, 2018 UT App 139, ¶ 49, 427 P.3d 1228 (quotation simplified); *see also* Utah Code Ann. § 76-1-402(3) (LexisNexis 2017) ("A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense."). An offense is a lesser included offense if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Utah Code Ann. § 76-1-402(3)(a). "The analysis of whether an offense is included for purposes of deciding whether to grant a defendant's request for a jury instruction must . . . begin with the proof of facts at trial." *State v. Baker*, 671 P.2d 152, 158 (Utah 1983). "[W]here two offenses are related because some of their statutory elements overlap, and where the evidence at the trial of the greater offense includes proof of some or all of those overlapping elements, the lesser offense is an included offense." *Id.* at 159. If a court determines there are some overlapping elements, it must then determine whether "the evidence offered provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Id.* (quotation simplified).

¶21     Higley claims it was error for the court to deny his motion to instruct the jury on reckless driving as a lesser included offense to his DUI charge. At trial, Higley's counsel requested the court instruct the jury on reckless driving as a lesser included offense to DUI because "DUI is a moving violation." The State opposed the motion, explaining that "DUI isn't always a driving violation." The court denied the motion because it determined that reckless driving "has a separate element that goes beyond what's required for DUI." The court elaborated, "I think if the

State wanted to, they could charge both counts . . . in a given case. Not this one, but they could. . . . And that's just—that's evidence [that] it's not a lesser included."

¶22   As relevant here, the elements of reckless driving are (1) operating a vehicle (2) "in willful or wanton disregard for the safety of persons or property." Utah Code Ann. § 41-6a-528(1)(a) (LexisNexis 2018). On the other hand, as relevant here, DUI "is a strict-liability crime," *see State v. Thompson*, 2017 UT App 183, ¶ 52, 405 P.3d 892, the elements of which are (1) "operat[ing] *or* be[ing] in actual physical control of a vehicle" (2) while "under the influence of. . . any drug," (3) "that renders the person incapable of safely operating a vehicle," Utah Code Ann. § 41-6a-502(1)(b) (emphasis added).

¶23   The court did not err because the elements of each charge do not sufficiently overlap; DUI does not require a mens rea, and reckless driving does. Additionally, DUI requires the defendant be "under the influence," and "incapable of safely operating a vehicle," which reckless driving does not. *Compare id.* § 41-6a-502(1)(b) *with id.* § 41-6a-528(1)(a). Although both offenses have an element of operating a vehicle, this is not sufficient overlap to constitute a lesser included offense, *see Baker*, 671 P.2d at 159, and we conclude the court did not err when it denied Higley's motion for a lesser included offense jury instruction.

III. Rule 23B Remand

¶24   An appellant may seek remand "to the [district] court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). To succeed, an appellant must allege nonspeculative "facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.* The facts alleged must be supported by affidavits and, "when assumed to be true, must establish both elements of a traditional ineffective-assistance claim." *State v.*

*Jordan*, 2018 UT App 187, ¶ 23, 438 P.3d 862 (quotation simplified).

¶25    Higley claims his trial counsel was ineffective when he (A) did not ask Higley questions about the brand of cigarettes he preferred or about the passengers in his vehicle shortly before his arrest, and (B) did not call Higley's mother to testify to the brand of cigarettes Higley preferred.[3] To establish objectively deficient performance by counsel, an appellant "must overcome the strong presumption that his trial counsel rendered adequate assistance by persuading the court that there was no conceivable tactical basis for counsel's actions," *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quotation simplified), such that "counsel's acts or omissions were objectively unreasonable," *State v. Scott*, 2020 UT 13, ¶ 36 ("[E]ven if a court concludes that counsel made an error, the ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable."). Higley has not established his trial counsel performed deficiently in either instance.

A.    It Was Not Objectively Unreasonable for Trial Counsel Not to Ask Higley Certain Questions on Direct Examination.

¶26    Higley claims his trial counsel was ineffective for not introducing evidence that "the brand of cigarettes Mr. Higley smoked was not the brand in which the heroin was found, and [that] the backseat passenger interacted with the center console in a way where he could have dropped the cigarette box with the heroin inside the console."

---

3. Higley also requests we remand to supplement the record with trial counsel's proposed jury instructions on reckless driving. But because we hold the district court did not err when it denied his motion to instruct the jury on reckless driving, *see supra* ¶ 23, supplementing the record with the proposed jury instructions is not necessary.

¶27 Higley's affidavit asserts that he has smoked Pall Mall Menthol Lights cigarettes for the last five years, that he has "a severe" mental health condition, and that he has never smoked non-menthol cigarettes. He explained that he believes the cigarette pack with the heroin inside came from the passengers he picked up earlier that evening because the man smoked throughout the ride and "was leaning directly over [the] center console" where the heroin was found. Higley's affidavit also says he gave this information to his trial counsel, who "did not ask [him] questions about it at trial."

¶28 Higley contends it was unreasonable for his trial counsel not to question him "about the backseat passenger's interactions with the center console" and about the type and brand of cigarettes he prefers. But Higley had ample opportunity to present his theory that the heroin was dropped by the passenger during his testimony.

¶29 Higley testified at length—and sometimes in narrative fashion—about the passengers in his vehicle, and trial counsel even asked whether "anything happen[ed] while [he was] in the car—out of the ordinary," to which Higley responded he heard the man in the backseat spill something. He did not elaborate about any other behavior from his passengers, though this would have been his opportunity to do so, including his current contention that the backseat passenger was leaning over his center console while smoking. And on cross-examination, Higley said the passengers did not leave anything in his vehicle. Officer One also testified that Higley asked if he could smoke a cigarette and then "made a movement with his hand toward . . . the center console," which is where the heroin was found inside a Natural American Spirit cigarette box. There were no other cigarette boxes found in the vehicle.

¶30 In short, the questions trial counsel (and opposing counsel) posed to Higley during his direct and cross-examinations gave Higley every opportunity to provide additional details—if he had any—about the brand of cigarettes

he preferred to smoke and about the involvement his passengers might have had with the center console. Trial counsel asked a number of open-ended questions in this area and allowed Higley to testify at times in narrative fashion about the events in question. Under these circumstances, the additional facts alleged, even if true, do not establish that trial counsel performed in an objectively deficient manner for not asking more specific questions about Higley's passengers on direct examination. *See Clark*, 2004 UT 25, ¶ 6.

B.    It Was Reasonable for Trial Counsel Not to Call Higley's Mother to Testify.

¶31    Next, Higley claims it was unreasonable for his trial counsel not to call his mother to testify about his preferred brand of cigarettes to bolster his defense that the heroin found in his center console was not his. Higley's mother's affidavit establishes that she "ha[s] only seen [Higley] buy Pall Mall Menthol Lights" and that she "see[s] his packs of cigarettes on a daily basis, as he leaves them in different rooms in [her] home." She also asserts she spoke with Higley's trial counsel "and told him [she would] be more than willing to testify" that Higley "only bought these kind of cigarettes." But failing to elicit this testimony at trial was not objectively unreasonable.

¶32    Officer Three testified that, upon being confronted with the cigarette pack containing heroin, Higley claimed it was his mother's; when Higley testified, he denied saying this to Officer Three. It is true trial counsel could have called Higley's mother to rebut this claim and to testify about Higley's preferred brand of cigarettes; in fact, she was listed as a potential witness. But the decision to call a witness is squarely within the trial strategies and tactics that are given wide latitude when determining whether an appellant received objectively deficient assistance of counsel, *see State v. Tyler*, 850 P.2d 1250, 1256–58 (Utah 1993), and we cannot say that counsel's decision "'fell below an objective standard of reasonableness' when measured against 'prevailing professional norms,'" *see State v. Popp*, 2019 UT App 173, ¶ 26,

453 P.3d 657 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). First, if Higley's mother testified, the State could have highlighted the inconsistent stories Higley told about the heroin, initially by claiming it was his mother's and then implying it belonged to his passengers. Second, given her relationship to Higley, counsel could have determined that the jury would have been unlikely to give her testimony much weight. Because these are "conceivable legitimate strategic bas[e]s," *State v. Moore*, 2012 UT App 227, ¶ 7, 285 P.3d 809 (quotation simplified), for trial counsel's decision not to call Higley's mother to testify, Higley has not met his burden of showing counsel's performance was objectively unreasonable, *see State v. Scott*, 2020 UT 13, ¶¶ 35–36; *State v. Ray*, 2020 UT 12, ¶ 36; *see also Taylor v. Warden*, 905 P.2d 277, 287 (Utah 1995) (concluding counsel performed reasonably when deciding not to call the defendant's father to testify because the "testimony would be more harmful than helpful" and the father "would not be very credible").

## CONCLUSION

¶33  Higley's trial counsel did not provide ineffective assistance by not moving to arrest judgment because any such motion would have been futile. The district court did not err when it denied Higley's motion to designate reckless driving as an offense included in DUI because there is insufficient overlap in the statutory elements to support a lesser included offense instruction. Thus, we affirm his DUI conviction. And because Higley has not established nonspeculative facts that show his trial counsel was ineffective for failing to question him more thoroughly about the passengers in his vehicle or the brand of cigarettes he preferred and for not calling his mother to testify, we deny his motion for a rule 23B remand.

———————