The STATE of Utah, Plaintiff and Respondent,

v.

**Maximilliano Luis SISNEROS, Defendant and Appellant.**

No. 17278.

Supreme Court of Utah.

May 19, 1981.

Walter F. Bugden, Jr., Salt Lake City, for defendant and appellant.

David L. Wilkinson, Robert N. Parrish, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals from a conviction of burglary of a non-dwelling.[1]

It is undisputed that in the early morning hours of May 30, 1980, defendant unlawfully entered the Salt Lake Mill and Lumber Company (hereinafter "Company"). He was discovered on the premises by Jack Merrick, a security officer employed by the Company. Merrick scuffled with defendant and eventually controlled him and called the police.

At trial, Merrick testified that he made a routine check of the Company at 1:00 a. m. on May 30, 1980, and that the interior of the business area was in order at that time: the floor was clean, the secretary's desk drawers were shut, and windows were intact. At approximately 2:50 a. m., Merrick returned to the Company for another check. He noticed that there was mud on the floor and that the secretary's desk drawer was open. He proceeded to the president's office where he found defendant standing against the wall as if he were hiding. Mer-

rick drew his pistol and told defendant to "come out." Defendant stepped into the doorway and said; "Kill me." Merrick stepped back and defendant came out of the room and stated, "You either kill me or I will kill you if I get that gun." Defendant moved toward Merrick and grabbed him, whereupon Merrick struck defendant on the back of the head with his pistol and knocked him down. The two struggled for about 20 minutes, during which time defendant was struck with the pistol and knocked down several times. In between each of these episodes, defendant shouted profanities at Merrick, threatened to kill Merrick, his family and "ten other people," threatened that a "revolution" was coming, and boasted of how tough he was and of how many penitentiaries he had been in. Defendant was bleeding profusely from the blows to the head and finally sat down on the secretary's chair. Merrick called the police and the Company vice president to report the incident. Following the arrival of the police, Merrick went to an area where the window had been broken and observed broken glass, mud and leaves on the floor inside the office.

Leland Janke, Vice President of the Company, testified that when he had closed the business on the afternoon of May 29, he had closed the drawer to his desk, observed that the secretary's desk drawers were closed, and knew that there were no broken windows in the office. He testified that he was summoned to the Company premises by a phone call from Merrick at about 3:00 a. m. on May 30. Upon his arrival, Janke discovered that several desk drawers were open and that a window in the front of the building was broken. No property was found to be missing. Janke also testified that defendant was not authorized to be in the building.

Officers from the Salt Lake City Police Department testified regarding their investigation of the incident. Officers Barton and Jacobsen arrived at the Company and immediately handcuffed defendant. When

1. In violation of U.C.A., 1953, 76–6–202.

they were met with resistance and hostility, they placed defendant on the floor, face down. Paramedics arrived and treated defendant's head wounds, after which he was transported to jail by Officer Kettenring.

The officers indicated that defendant seemed to be under the influence of alcohol at the time of his arrest. Officer Barton testified that although it was difficult to understand defendant and that he was not responding to questions, defendant was making sense in what he said. Officer Kettenring testified that, in his opinion, defendant was drunk but that his words were clear and understandable, and that defendant responded to questions and followed instructions. Officer Kettenring also testified that although he staggered slightly, defendant had no trouble walking to the jail from the patrol car and that he appeared to be aware of what was going on around him.

Meredith Hess, employed in the medical dispensary at the Salt Lake County Jail, testified that when defendant arrived at the jail, she was asked to examine him for injuries. In her opinion, defendant's lacerations required medical treatment, but he refused to submit to any treatment. She testified that defendant appeared to be under the influence of intoxicants but that he responded coherently to her questions and requests.

Defendant took the stand and admitted to formerly having been convicted of the crime of burglary. He also testified that he became intoxicated on the night of May 29. He stated that he began to drink with friends at around noon, and that he drank about twelve cans of beer, one-third of a fifth of tequila, and one-third of a fifth of bourbon. At 3:00 p. m., defendant walked to a nearby bar where he drank beer until he was refused further service. He then left with a lady friend who drove her car to a liquor store. There, they purchased a pint of tequila, a pint of "Southern Comfort" and two six-packs of beer. The two sat in the car and drank before going to a "disco" on Redwood Road. Defendant said he didn't remember leaving the disco, or anything that happened thereafter.

Dr. Louis Moench also testified for the defense. Dr. Moench stated that if defendant drank what he said he did on the day in question, he would have been "seriously intoxicated." He further testified that the consumption of such an amount of alcohol would seriously impair one's ability to form intent. The doctor also felt that the lack of ability to form intent was in no way inconsistent with a person's ability to do more simple, "automatic" things, such as turning the handle of a door and opening it, breaking a window, or even driving a car. On cross-examination, Dr. Moench stated that it is possible for a person to be impaired and still to know that which he is doing, as well as to intend that which he is doing.

After weighing the evidence, the jury returned a verdict of guilty. Defense counsel moved for judgment notwithstanding the verdict, which motion was denied. This appeal followed.

■ To be found guilty of burglary of a non-dwelling, a person must 1) enter or remain unlawfully in a building, not a dwelling, and 2) do so with the intent to commit a theft. Defendant admits that the first element is clearly satisfied in that he forced entry into the building, and that he was not authorized therein. Defendant challenges, however, the sufficiency of the evidence as it relates to his intent to commit a crime. Specifically, defendant claims that the evidence was insufficient to prove his intent to commit theft, although he admits that he unlawfully entered the premises. Furthermore, he contends that his intoxicated condition prevented him from forming the requisite specific intent to commit the crime.

■ A person acts with intent when it is his conscious objective or desire to engage in the conduct or to cause the result.[2] Obviously, it is difficult to prove directly what

2. U.C.A., 1953, 76–2–103(1).

is in a defendant's mind. As was stated in the case of *State v. Peterson*:[3]

> With respect to the intent: It is true that the State was unable to prove directly what was in the defendant's mind ... and that he in fact denied having any such intent. However, his version does not establish the fact, nor does it even necessarily raise sufficient doubt to vitiate the conviction. If it were so, it would be within the power of a defendant to defeat practically any conviction which depended upon his state of mind. As against what he says, it is the jury's privilege to weigh and consider all of the other facts and circumstances shown in evidence in determining what they will believe. This includes not only what was said and what was done, but also the drawing of reasonable inferences from the conduct shown .... This is in accord with the elementary rule that a person is presumed to intend the natural and probable consequences of his acts. [Citations omitted.][4]

■ On appeal, to successfully challenge a conviction on the grounds of insufficiency of the evidence, it must appear that when viewing the evidence (and all inferences that may reasonably be drawn therefrom) in the light most favorable to the verdict of the jury, reasonable minds could not believe the defendant guilty beyond a reasonable doubt.[5]

■ When one breaks and enters a building in the nighttime, without consent, an inference may be drawn that he did so to commit larceny.[6] The fact that nothing was missing when defendant was apprehended is no defense to the burglary charge;[7] nor does it destroy the inference of intent to steal at the time of entry.[8] On the facts of this case, the jury could reasonably infer that defendant entered the building for the purpose of theft.

■ Likewise, on the facts presented, the jury could reasonably conclude that defendant's intoxication did not negate his criminal intent. The court's instruction on this issue is consistent with statutory law[9] and reads as follows:

> Under the law, a state of voluntary intoxication from alcohol is not a defense to a criminal charge unless such intoxication is of such degree or state as to negate the existence of the mental state which is an element of the offense.
>
> Evidence of intoxication may thus be taken into consideration by the jury in connection with determining the intent with which any particular act may have been committed.
>
> Being under the influence of alcohol is no excuse for the commission of a crime where it merely makes a person more excited or reckless, so that one does things one might not otherwise have done. To be a defense to such a crime, one must be so under the influence of alcohol that at the time of the alleged offense, he was then and there incapable of forming the necessary intent, namely, having a conscious objective or desire to unlawfully enter the building with the intent to commit a theft.
>
> If from all the evidence you have a reasonable doubt whether the defendant was capable of forming the specific intent to steal the property of the Salt Lake Mill and Lumber Company, then you must find the defendant not guilty of the offense of Burglary.

3. 22 Utah 2d 377, 453 P.2d 696 (1969).

4. *Id.* at 378, 453 P.2d 696.

5. *State v. Mills*, Utah, 530 P.2d 1272 (1975); see also, *State v. Wilson*, Utah, 565 P.2d 66 (1977).

6. *State v. Hopkins*, 11 Utah 2d 363, 359 P.2d 486 (1961); *State v. Tellay*, 7 Utah 2d 308, 324 P.2d 490 (1958).

7. *State v. Baldwin*, 29 Utah 2d 318, 509 P.2d 350 (1973).

8. *Mirich v. State*, Wyo., 593 P.2d 590 (1979).

9. U.C.A., 1953, 76-2-306.

The issue of intoxication was one for the jury's consideration.[10] There was evidence that defendant's condition was such that he could not have formed the requisite intent. There was also evidence that defendant was coherent, understood and followed directions, and was aware of what was going on around him. Although defendant was under the influence of alcohol at the time of the commission of the offense, the jury could reasonably conclude that defendant maintained the requisite intent to burglarize the premises. The jury verdict will therefore not be disturbed.

The conviction and judgment is hereby affirmed.

HOWE and OAKS, JJ., concur.

MAUGHAN, C. J., and STEWART, J., concur in the result.

10.  *Hopt v. People*, 104 U.S. 631, 26 L.Ed. 873 (1881).