**STATE of Utah, Plaintiff and Respondent,**

v.

**Stephen Wayne PORTER, Defendant and Appellant.**

**No. 20149.**

Supreme Court of Utah.

Aug. 29, 1985.

Edward Brass & Randall Gaither, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra J. Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant appeals from jury convictions of aggravated burglary of an apartment, in violation of U.C.A., 1953, § 76–6–203; burglary of a laundry room, in violation of U.C.A., 1953, § 76–6–202; and theft, in violation of U.C.A., 1953, § 76–6–404. He seeks to have the verdicts set aside or, in the alternative, to be awarded a new trial.

Shortly after midnight on February 22, 1984, the manager of an apartment complex in Salt Lake City looked through a peephole in his apartment door and saw defendant picking the lock on the door to apartment 205 directly across the hall. The manager called the police. They arrived fifteen minutes later, entered apartment 205, and found defendant lying on the floor with an army jacket draped over his legs. The police searched the jacket and found a loaded pistol and approximately twenty-one dollars in dimes. They also searched a red knapsack belonging to defendant which contained lock picks, a black notebook, a pair of vise grips, a pair of needlenose pliers, a set of keys, a list of radio frequencies, and other miscellaneous items. Strapped to defendant's waist was a radio scanner tuned to the frequency used by the local police. When the officers asked defendant his name and his purpose for being in the apartment, he responded with a false name and said, "You have got me. What more can I say?"

Later that morning, at approximately 7:00 a.m., the manager and his wife went to the laundry room to remove the money from the coin-operated washing machines. The door to the laundry room was normally locked, and only the manager, tenants, and owners had keys. The manager inspected the washers and found metal shavings under several of the coin boxes, noting that the area around the keyholes had been "stripped with some metal device." He

also observed that one coin box was dislodged and empty, although it would normally contain between twenty and thirty dollars when serviced.

At trial, defendant testified that the army jacket did not belong to him, but that he had mistakenly picked it up from a truck he had helped push-start on the night of the burglary. He also testified that he had only recently arrived in the Salt Lake City area. However, the manager's wife testified that she had seen him in a storage room of the complex nearly two months earlier. On that occasion, he was wearing a green army jacket.

Defendant testified that he heard from persons whose truck he had earlier helped push-start that apartment 205 was vacant. He also testified that he entered the apartment only to warm himself and to sleep. The manager testified that although he was not sure that the mailbox for apartment 205 had a name on it, he was sure that the apartment directory always showed names for every apartment, even those that were vacant.

## ADDITIONAL JURY INSTRUCTION

The principal issue for us to determine is whether the trial court gave a correct instruction when, after retiring for deliberation, the jury sought clarification of the intent required for conviction of aggravated burglary. The trial judge's instruction No. 12 to the jury accurately defined burglary as found in U.C.A., 1953, § 76–6–202: "A person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person." Instruction No. 18 established the method whereby the jury was to determine whether defendant had the specific intent required for conviction of burglary and aggravated burglary:

18. The intent with which an act is done denotes a state of mind and connotes a purpose in so acting. Intent being a state of mind is seldom susceptible of proof by direct and positive evidence and

must ordinarily be inferred from acts, conduct, statements, and circumstances. Thus, you would be justified in inferring that a person must have intended the natural and probable consequences of any act purposely done by him.

 After the jurors had retired for deliberation, they informed the judge by message that they desired to be further instructed. Specifically, the jury asked the judge, "Instruction Number 18 where it says, 'infers from the acts, conduct, and statements and circumstances,' are these the acts and conduct connected specifically with Apartment 205, or also with previous events, what the person may have done in the laundryroom?" The judge responded in writing. "You may consider all conduct of the defendant on the premises on February 22, 1984." Defendant contends that this additional instruction constituted an impermissible comment on the evidence.

The additional instruction was authorized by Rule 17(m) of the Utah Rules of Criminal Procedure, U.C.A., 1953, § 77–35–17(m), because it clarified a point of law regarding how the jury may infer an actor's intent.

We have defined an "inference" as:

a logical and reasonable conclusion of the existence of a fact in the case, not presented by direct evidence as to the existence of the fact itself, but inferred from the establishment of other facts from which, by the process of logic and reason, based upon common experience, the existence of the assumed fact may be concluded by the trier of the fact.

*Wyatt v. Baughman,* 121 Utah 98, 109, 239 P.2d 193, 198–99 (1951). An inference goes to the trier of fact to be weighed along with the contravening evidence because such inference, like all inferences capable of being drawn from evidence intrinsically containing the seeds from which logical deductions may be made, rests on basic facts which remain in the case. *Id.* at 110, 239 P.2d at 198–99.

 Burglarious intent "is a mental state of the actor. [T]he trier of fact must resort to reasonable inferences based upon

[an] examination of the surrounding circumstances to reasonably infer its existence." *Farno v. State,* 159 Ind.App. 627, 629, 308 N.E.2d 724, 725 (1974); *see State v. Sisneros,* Utah, 631 P.2d 856 (1981); *State v. Hopkins,* 11 Utah 2d 363, 359 P.2d 486 (1961); *see also State v. Brooks,* Utah, 631 P.2d 878 (1981); *State v. Tellay,* 7 Utah 2d 308, 324 P.2d 490 (1958). Intent with which an entry is made is rarely susceptible of direct proof. It is usually inferred from circumstantial evidence: the manner of entry, the time of day, the character and contents of the building, the person's actions after entry, the totality of the surrounding circumstances, and the intruder's explanation. *See* 12A C.J.S., *Burglary* §§ 85 and 104; 13 Am.Jur.2d, *Burglary* § 52.

 Where the breaking and entering are clearly established and not controverted, the intent to steal may be sufficiently established by inference fairly deducible from all the circumstances and need not be established by direct proof. As a result, in the present fact situation, the judge's additional instruction that the jury could consider all of the evidence presented to them for a determination of aggravated burglary was not an improper clarification. Likewise, it was not a comment on the evidence because it did not advise the jury on the weight to be given any particular item of evidence. The jury was at liberty to infer from the fact that defendant had entered the laundry room to commit a theft, that such may have been his intent when he entered apartment 205.

## SUFFICIENCY OF THE EVIDENCE

 Defendant also contends that the evidence at trial was insufficient to sustain an aggravated burglary verdict. We disagree. The testimony of five witnesses called by the State and the circumstantial evidence, *i.e.,* defendant's manner of entry into apartment 205, the lateness of the hour, defendant's explanation to the police officers, "You have got me. What more can I say?" and the totality of the sur-

rounding circumstances provide sufficient bases to support the jury verdict.

## TWO SEPARATE OFFENSES

Defendant contends that the trial court erred by instructing the jury that he could be convicted of two separate burglary offenses involving the same building. He asserts that the incidents in the laundry room and apartment 205 were part of a single criminal episode, that neither of the involved areas constituted dwellings, and that U.C.A., 1953, § 76-1-402(1) mandates that only one conviction may be obtained if the same act of a defendant may be punished under different provisions of the criminal code.

■ Defendant unlawfully entered into the secured laundry room where he stole the dimes from the dryer. He then wandered through the apartment house for almost twenty minutes before breaking into apartment 205. Pursuant to U.C.A., 1953, § 76-6-201, " 'Building' in addition to its ordinary meaning, means any ... structure ... adapted for overnight accommodation or for carrying on business therein and includes: (1) Each separately secured or occupied portion of the structure...." Both the laundry room and apartment 205 were separately secured portions of the apartment house. Therefore, under the statute, defendant unlawfully entered two separate buildings.

■ Neither "building" that defendant entered was required to be a "dwelling" to support burglary convictions. As clearly stated in U.C.A., 1953, § 76-6-202(2), the character of the building is important only in determining whether the burglary is a felony of the second or third degree. Defendant's conviction for burglary of the laundry room was for the lesser third degree felony. It did not require entry into a dwelling. Aggravated burglary, the crime for which defendant was convicted for his unlawful entry into apartment 205, is a first degree felony regardless of whether a dwelling is involved. U.C.A., 1953, § 76-6-203. Defendant's possession of a gun during the burglary

was the determining factor establishing aggravated burglary.

■ Defendant's actions did not constitute a single crime. Neither section 76-1-401 nor our holding in *State v. Bair*, Utah, 671 P.2d 203 (1983), mandates that we so hold. The evidence was sufficient for the jury to have inferred that defendant possessed the requisite intent when he entered each of the separately secured portions of the apartment house. The provision in section 76-1-402(1) against double punishment for a single act is inapplicable here. Although defendant's crimes were committed during a single criminal episode, he committed two distinct burglaries separately punishable under section 76-1-402. We hold, therefore, that the trial judge did not err in instructing the jury that defendant could be convicted of two separate burglary offenses.

## DENIAL OF RIGHT TO REPRESENT HIMSELF

■ Finally, defendant contends that he was denied his constitutional right to represent himself and to control his own defense by the court's ruling prohibiting him from examining a witness. However, the record clearly shows that this was not the case. The State had called Ron Millard to testify concerning the lock picks and keys found in defendant's possession. Defendant sought to personally cross-examine the witness about how the tools could have been used to open, without force, some of the laundry machines in a matter of seconds. The judge did not preclude defendant's questioning of the witness. Instead, the judge stopped defendant from asking questions on cross-examination that were outside the scope of direct examination. The judge expressly reserved for defendant the right to call the expert as his own witness. However, defendant did not attempt to call the witness, or any other person, as an expert to answer his proposed questions. The judge appropriately exercised his discretion by not allowing defendant to cross-

examine the State's expert witness in an improper manner.

The convictions are affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.